Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL ESPECIAL**

| | | |
|---|---|---|
| APEX BANK<br><br>**Recurrido**<br><br>V.<br><br>GILBERTO VÁZQUEZ GARCÍA, IRIS M. COLLAZO VÁZQUEZ Y LA SOC. LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS<br><br>**Peticionario** | KLCE202500236 | ***CERTIORARI***<br>procedente del Tribunal de Primera Instancia Sala de Guayama<br><br>Civil Núm: GM2022CV00277<br><br>Sobre: Ejecución de Hipoteca |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

Hernández Sánchez, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 5 de mayo de 2025.

El 10 de marzo de 2025, el Sr. Gilberto Vázquez García, su esposa, la Sra. Iris Margarita Collazo, y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto, los peticionarios) comparecieron ante nos mediante *Petición de Certiorari*. En primer lugar, solicitaron la revisión de una *Orden* que se emitió y notificó notificó el 18 de febrero de 2025 por el Tribunal de Primera Instancia, Sala Superior de Guayama (TPI). Mediante el aludido dictamen, el TPI puntualizó que, el 7 de febrero de 2025 emitió una *Orden* declarando No Ha Lugar la solicitud de término que presentaron algunos co-demandados para presentar una réplica a la oposición presentada por Apex Bank (Apex o recurrido). Sostuvo que, en ese misma *Orden,* señaló una vista argumentativa para el 19 de febrero de 2025 para atender la controversia. Así pues,

resolvió que se tenía por no puesta la réplica presentada por los co-demandados y ordenó a que se eliminara.

Por otro lado, los peticionarios solicitaron la revisión de una *Resolución* que el TPI emitió y notificó el 25 de febrero de 2025. En este dictamen, el TPI declaró No Ha Lugar la reclamación que presentaron los peticionarios en torno al derecho de propiedad o de posesión sobre el instrumento. Expresó que ello incluía la reclamación para rescindir la negociación y recuperar el instrumento, y, por ende, la desestimación solicitada. Resolvió que, conforme a la Sección 2-118(g) de la Ley Núm. 208 de 17 de agosto de 1995, según enmendada, mejor conocida como la *Ley de Transacciones Comerciales*, 19 LPRA sec. 518 (Ley de Transacciones Comerciales), la reclamación de la parte peticionaria estaba prescrita. Por tal razón manifestó que, no era necesario entrar a discutir los méritos de ésta. Finalmente, refirió el caso al Centro de Mediación de Conflictos para la continuación de los procedimientos previamente iniciados en dicho ente.

Por último, solicitaron la revisión de otra *Orden* que el TPI emitió y notificó el 25 de febrero de 2025 refiriendo el presente caso al Centro de Mediación Compulsoria de la Región Judicial de Guayama para la continuación del proceso de mediación compulsoria que comenzó el 17 de octubre de 2024. Puntualizó que, éste se llevaría a cabo mediante videoconferencia el 12 de marzo de 2025.

Por los fundamentos que expondremos a continuación, **denegamos** le recurso de epígrafe.

**I.**

El 22 de abril de 2022, Apex presentó una *Demanda* sobre ejecución de hipoteca por la vía ordinaria en contra de los

peticionarios.[1] En ésta, alegó que era tenedor de un pagaré hipotecario que se suscribió el 27 de agosto de 2005 sobre una propiedad ubicada en el municipio de Guayama perteneciente a los peticionarios. Sostuvo que, los peticionarios incumplieron con las cláusulas de la hipoteca antes mencionada y no han efectuado el pago de ésta desde el 1 de agosto de 2021 hasta el presente. Ante ello, razonaron que la deuda estaba vencida, liquida y era exigible y ascendía a una suma principal de $60,876.36 más intereses. Así pues, solicitaron el pago de la deuda antes expuesta, entre otras cosas.

En respuesta, el 14 de mayo de 2022, los peticionarios presentaron una *Contestación a Demanda y Reconvención*.[2] En su alegación responsiva, negaron la mayoría de las alegaciones en su contra. Específicamente, sostuvieron que según surgía de la prueba documental anejada, Apex de mala fe pretendía cobrar partidas que eran ajenas al contrato de préstamo hipotecario objeto de esta controversia. Afirmaron que, habían realizado todos los pagos de las mensualidades de agosto de 2021 hasta mayo de 2022. Añadieron que, los recurridos no actuaron de buena fe en cuanto al contrato de préstamo hipotecario, ya que incumplieron con la legislación federal que le requiere realizar una investigación con relación a los mencionados pagos y a aplicar correctamente los pagos que ellos presuntamente realizaron correspondientes al préstamo hipotecario. Ante lo antes expuesto, presentaron su reconvención y concluyeron que no procedía que se ejecutara la hipoteca.

Luego de varios trámites procesales que no son pertinentes discutir, el 14 de enero de 2025, los peticionarios presentaron una

---

[1] Véase, págs. 1-4 el apéndice del recurso.
[2] Íd., págs. 23-34.

*Moción Urgente bajo la Ley de Instrumentos Negociables.*[3]  En ésta indicaron que, el 21 de julio de 2021, Apex adquirió el pagaré hipotecario objeto de la presente controversia con conocimiento de su vencimiento y de que estaba en mora desde enero del año 2017 y años subsiguientes.  A tales efectos argumentaron que, conforme a la Sección 2-302 (a)(2) de la Ley de Transacciones Comerciales, 19 LPRA sec. 602, Apex no calificaba como un tenedor de buena fe.  En vista de ello, sostuvieron que, la Sección 2-306 de la Ley de Transacciones Comerciales, 19 LPRA sec. 606, establecía que, cuando una persona tomaba un instrumento sin cumplir con el requisito de tenedor de buena fe, estaban sujetos a una reclamación por la parte demandada de derecho de propiedad o de posesión sobre el instrumento, incluyendo una reclamación de la parte demandada para rescindir la negociación y recuperar el instrumento que se describe en la demanda de epígrafe.  Por las razones antes expuestas, le solicitaron al TPI que declarara Ha Lugar su reclamación para rescindir la negociación y recuperar el instrumento objeto de la Demanda de epígrafe.  De igual forma, le solicitaron que desestimara la Demanda de epígrafe y condenara a Apex al pago de costas y honorarios de abogado.

En respuesta, el 6 de febrero de 2025, Apex presentó su *Moción en Cumplimiento de Orden y en Oposición a Moción Urgente* [...].[4]  En primer lugar, señaló que, la presentación de la moción urgente de los peticionarios tuvo el efecto de detener el proceso de mediación que se estaba llevando a cabo.  Así pues, indicó que, resultaba claro que la moción presentada fue una táctica de dilación para extender el litigio innecesariamente. Sostuvo que, dicho planteamiento se pudo haber presentado en cualquier momento previo al comienzo de la segunda ronda de mediación.

---

[3] Íd., págs. 1109-1115.
[4] Íd., págs. 1126-1130.

Por otra parte, entrando a los méritos del planteamiento de los peticionarios, señaló que, la tenencia de buena fe se presumía y el peso de la prueba para probar lo contrario les correspondía a los peticionarios. Puntualizó que ello no se logró probar en la moción urgente. Además, argumentó que, cualquier reclamación para rescindir la negociación y recuperar el instrumento que los peticionarios hubiesen podido tener al amparo de la Ley de Transacciones Comerciales, *supra,* ya prescribió. Para sustentar este argumento, citó la Sección 2-118(g) de la Ley de Transacciones Comerciales, 19 LPRA sec. 518, que establecía que la acción para exigir el cumplimiento de una obligación, deber o derecho que surgiera del capítulo segundo, debía comenzarse dentro de tres (3) años siguientes a la fecha en que surgiera la causa de acción. Ante ello, señaló que, los peticionarios tenían hasta el 21 de julio de 2024 para presentar la referida acción, ya que Apex compró el instrumento negociable objeto de esta controversia el 21 de julio de 2021. En virtud de lo antes expreso, le solicitó al TPI que declarara No Ha Lugar la moción urgente de los peticionarios.

El 7 de febrero de 2025, los peticionarios presentaron una *Solicitud de Prórroga* solicitando un término de veinte (20) días adicionales para presentar sus alegaciones y argumentos respecto a la oposición que presentó Apex.[5] Atendidos los escritos de ambas partes, el 7 de febrero de 2025, el TPI emitió y notificó una *Orden* mediante la cual señaló una vista argumentativa para el 19 de febrero de 2025 para atender los planteamientos de las partes.[6] Con relación a la solicitud de prórroga el TPI emitió y notificó otra *Orden* el 7 de febrero de 2025 declarándola No Ha Lugar.[7] Puntualizó que en la vista argumentativa se discutirían las controversias

---

[5] Íd., págs. 1131-1132.
[6] Íd., pág. 1133.
[7] Íd., pág. 1134.

presentadas. Añadió que las partes debían comparecer preparadas para argumentar en derecho sus posiciones.

A pesar de que el TPI declaró No Ha Lugar la solicitud de los peticionarios para presentar una réplica mediante su orden del 7 de febrero de 2025, el 17 de febrero de 2025 los peticionarios presentaron una *Réplica a "Oposición a Moción bajo la Ley de Instrumentos"*.[8] Así las cosas, el 18 de febrero de 2025, el TPI emitió y notificó una *Orden* mediante la cual expresó que el 7 de febrero de 2025 emitió una *Orden* declarando No Ha Lugar la solicitud de término que presentaron algunos co-demandados para presentar una réplica a la oposición presentada por Apex.[9] Sostuvo que, en ese misma *Orden*, señaló una vista argumentativa para el 19 de febrero de 2025 para atender la controversia. Así pues, resolvió que se tenía por no puesta la réplica presentada por los peticionarios y ordenó a que se eliminara.

En desacuerdo con esta determinación, ese mismo día, a saber, el 18 de febrero de 2025, los peticionarios presentaron una solicitud de reconsideración.[10] En síntesis, argumentaron que procedía la réplica presentada, ya que la presentaron dentro del término de veinte (20) días provisto por la Regla 8.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 8.4. Evaluado este escrito, el 19 de febrero de 2025 el TPI emitió y notificó una *Resolución* denegando la solicitud de reconsideración.[11] Expresó que, los peticionarios ya habían sido promoventes de la solicitud y la oposición a la que se refiere la Regla 8.4 de Procedimiento Civil, *supra*. Puntualizó que, el Tribunal, dentro de su discreción, determinó celebrar una vista para atender la controversia no permitiendo réplicas ni dúplicas por el momento. Finalmente,

---

[8] Íd., págs. 1135-1159.
[9] Íd., pág. 1160.
[10] Íd., págs. 1161-1164.
[11] Íd., pág.1166.

sostuvo que si luego de celebrada la vista argumentativa, el Tribunal entendía que procedía la presentación de escritos adicionales previos a resolver el asunto, así se dispondría.

Luego de celebrada la vista argumentativa en la cual las partes tuvieron la oportunidad de exponer y defender sus posturas, el 25 de febrero de 2025, el TPI emitió y notificó una *Resolución* mediante la cual declaró No Ha Lugar la *Moción Urgente bajo la Ley de Instrumentos Negociables* que presentaron los peticionarios.[12] Particularmente, declaró No Ha Lugar la reclamación que presentaron los peticionarios en torno al derecho de propiedad o de posesión sobre el instrumento. Expresó que ello incluía la reclamación para rescindir la negociación y recuperar el instrumento, y, por ende, la desestimación solicitada. Afirmó que, conforme a la Sección 2-118(g) de la Ley de Transacciones Comerciales, *supra*, la reclamación de la parte peticionaria estaba prescrita. Por tal razón manifestó que no era necesario entrar a discutir los méritos de ésta. Finalmente, refirió el caso al Centro de Mediación de Conflictos para la continuación de los procedimientos previamente iniciados en dicho ente.

Inconformes con la *Orden* del 18 de febrero de 2025 y la *Resolución* y la *Orden* que se emitieron el 25 de febrero de 2025, el 10 de marzo de 2025, los peticionarios presentaron el recurso de epígrafe y formularon los siguientes señalamientos de error:

> **Erró el Tribunal *a quo* al declarar por no puesta la réplica presentada el 17 de febrero de 2025 dentro del término de veinte (20) días dispuesto en la Regla 8.4 de las de Procedimiento Civil y al ordenar a Secretaría eliminar la misma en el caso de autos.**
>
> **Erró el Tribunal *a quo* al descartar, sin fundamento alguno, en su Resolución de 25 de febrero de 2025 la jurisprudencia que dispone que todo acto ejecutado por el demandante Apex en contra de lo que dice la Ley de Transacciones Comerciales es nulo y, como consecuencia, inexistente e ineficaz porque nunca "nació" en derecho y no genera**

---

[12] Íd., págs. 1168.

**consecuencia jurídica alguna" en virtud de la cual el planteamiento de prescripción que hace el demandante en la oposición de 6 de febrero de 2025 es improcedente en derecho por haber el demandante Apex violentado crasamente la Sección 2-302 – Tenedor de Buena Fe (19 L.P.R.A. § 602) DE LA Ley de Transacciones Comercial4es por lo que el demandante no cualifica como tenedor de buena fe bajo la Ley de Transacciones Comerciales.**

**Erró el Tribunal *a quo* al declarar No Ha Lugar a la reclamación de la demandada de derecho de propiedad o de posesión sobre el instrumento, incluyendo la reclamación para rescindir una negociación y recuperar el instrumento y, por consiguiente, la desestimación solicitada por éste.**

Cabe precisar que, junto al recurso de epígrafe, los peticionarios presentaron una solicitud en auxilio de jurisdicción. En esta solicitaron la paralización de los procedimientos ante el TPI hasta tanto este foro resolviera la presente controversia. Atendido el recurso y la solicitud en auxilio de jurisdicción presentada, el 11 de marzo de 2025, emitimos una *Resolución* ordenando la paralización de los procedimientos ante el TPI. Además, le concedimos a la parte recurrida hasta el 20 de marzo de 2025 para presentar su postura en cuanto al recurso. Oportunamente, Apex presentó *su Oposición a Expedición de Auto de Certiorari* y negó que el TPI cometiera los errores que los peticionarios le imputaron.

Posteriormente, el 27 de marzo de 2025, emitimos una *Resolución* mediante la cual puntualizamos que la *Resolución* que el TPI emitió el 25 de febrero de 2025 carecía de fundamentos necesarios para que pudiésemos ejercer adecuadamente nuestra función revisora. En consecuencia, le concedimos hasta el 8 de abril de 2025 al juez del TPI para fundamentarla conforme lo dispone la Regla 83.1 del Reglamento del Tribunal de Apelaciones, 4 LPRA XXII-B, R. 83.1.

En cumplimiento con nuestra orden, el 8 de abril de 2025, el juez del TPI emitió una *Resolución Enmendada* y expresó lo siguiente:

La parte demandada basa su reclamo en que, siendo el demandante un tenedor de mala fe, según éste alega, a tenor con la Sección 2-302 de la Ley Núm. 208 de 17 de agosto de 1995, según enmendada, mejor conocida como la "Ley de Transacciones Comerciales", 19 LPRA §602, está sujeto a una reclamación de derecho de propiedad o de posesión sobre el instrumento o su producto, incluyendo una reclamación para rescindir una negociación y recuperar el instrumento o su producto, conforme dispone Sección 2-306 de la Ley de Transacciones Comerciales, 19 LPRA §606.

A pesar de lo anterior, si para propósitos de la presente discusión, asumiéramos que la parte demandante es tenedor de mala fe, la causa de acción de la parte demandada está prescrita. Veamos.

La Sección 2-118 de la Ley de Transacciones Comerciales, 19 LPRA §518, en específico el sub-inciso g, establece que para exigir el cumplimiento de una obligación, deber o derecho que surja del capítulo segundo, la acción deberá comenzarse dentro de los tres (3) años siguientes a la fecha en que surja la causa de acción.

Según surge del anejo de la Moción Urgente presentada por los demandados (SUMAC 151), mediante carta fechada 14 de septiembre de 2021, estos fueron notificados que el demandante había adquirido el préstamo hipotecario objeto del presente caso el 21 de julio de 2021. Por lo tanto, los tres años para que los demandados pudieran invocar un derecho como el antes discutido comenzaron el 14 de septiembre de 2021, expirando dicho término el 14 de septiembre de 2024.

Véase como la parte demandada ha pretendido traer una nueva causa de acción, en esta etapa de los procedimientos, sin solicitar una enmienda a su contestación a demanda y reconvención ni autorización para ello, sobre un asunto estrictamente de derecho, debiendo haber incluido la misma como parte de su Contestación a Demanda y Reconvención presentada el 14 de mayo de 2022.

Sin embargo, no fue hasta el 14 de enero de 2025 que, mediante la Moción Urgente presentada por los demandados (SUMAC 150), estos traen su reclamo por primera ocasión a la atención de este Tribunal, más de cuatro meses después de expirado el término prescriptivo.

Aún si el demandado tuviera razón, el acto que se le imputa al demandante no está catalogado como uno contrario a la ley y, por consiguiente, nulo, como pretende establecer la parte demandada, según planteado por ésta en la Vista Argumentativa celebrada el 19 de febrero de 2025. Si fuera así, la propia ley no establecería un término prescriptivo para iniciar dicha causa de acción.

> Habiéndose determinado la prescripción de la causa de acción presentada por la parte demandada sobre derecho de propiedad o de posesión sobre el instrumento, incluyendo la reclamación para rescindir una negociación y recuperar el instrumento, no es necesario entrar a discutir los méritos de ésta.

En virtud de lo antes expuesto, el TPI se sostuvo en su determinación de declarar No Ha Lugar la solicitud de desestimación que presentó Metro Caguas. Así pues, nuevamente refirió el caso al Centro de Mediación de Conflictos para la continuación de los procedimientos previamente iniciados en dicho ente.

Así las cosas, el 10 de abril de 2025, emitimos una *Resolución* concediéndole a las partes hasta el 22 de abril de 2025 para expresarse en torno a esta Resolución *Enmendada.* Oportunamente, ambas partes presentaron sus escritos expresándose en torno al referido dictamen. Con el beneficio de la comparecencia de ambas partes procedemos a resolver el asunto ante nos. *Veamos.*

## II.

### -A-

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró*, 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto, ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción.

Íd. Así, "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de las Reglas de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

En otros términos, la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró, supra,* pág. 335. La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones discrecionales del Tribunal de Primera Instancia cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago,* 176 DPR 559, 581 (2009).

## III.

Nos corresponde justipreciar si debemos ejercer nuestra facultad discrecional al amparo de los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, *supra.* Luego de examinar el expediente a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra,* no identificamos razón por la cual este Foro deba intervenir. Ello, ya que no se presentan ninguna de las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios o postsentencia en los que el TPI haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. Reiteramos que en el recurso que aquí atendemos no se nos ha demostrado que haya alguno de estos escenarios.

## IV.

Por los fundamentos antes expuestos, ***denegamos*** el recurso de epígrafe y levantamos la paralización de los procedimientos ante el TPI.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones